*Moulton v. Kavana.*

## MOULTON *vs.* KAVANA.

Notice given by a plaintiff in a justice's court, at the close of the trial, and before the rendition of judgment, in the hearing of the defendant's counsel that he will apply for an *immediate execution* should judgment pass in his favor, is sufficient to authorize the issuing of the execution on the oath of danger.

So a *written notice* given to the defendant on the day next after the rendition of the judgment, and three days before the issuing of the execution, of an intention to apply for the execution, is sufficient, although it states neither *time* or *place* when the application will be made.

ERROR from the Oneida common pleas. Kavana brought an action of *false imprisonment* against Moulton, for causing him to be arrested on an execution issued from a justice's court, on a judgment in favor of Moulton against Kavana, which execution he alleged had been *illegally issued*, previous to the time limited by the statute for the issuing of justice's executions; and that if it had been issued on oath of danger, that he (Kavana) had not had due notice of Moulton's intention to apply for such execution so as to enable him to give security. The suit before the justice, of Moulton against Kavana, was tried on the *fifth* day of June, 1837 ; at the close of the trial the justice informed the parties that he would take four days to make up his judgment. Whereupon the counsel for Moulton said that if judgment should be rendered in favor of Moulton he should require *immediate execution ;* the counsel for Kavana then being present. On the *ninth* day of June the justice rendered judgment in favor of Moulton, who on the next day, caused a written notice to be served on Kavana that he would apply for an execution on the judgment, (omitting to state *when* and *where* he would make such application.) On the *thirteenth* of June, Moulton made the usual oath of danger, and the execution issued upon which the defendant was arrested. The common pleas decided that both the *verbal* and *written* notice were insufficient within the meaning of the act, and the jury, under the charge of the court, found a verdict for

Moulton v. Kavana.

the plaintiff for $75 damages, on which judgment was rendered. The defendant sued out a writ of error.

*C. Tracy*, for the plaintiff in error.

*A. Bennett*, for the defendant in error.

*By the Court*, Cowen, J. The question is whether Moulton took the regular steps to obtain execution, within 2 R. S. 178, 9, § 134, 135, 2d ed. The first section, viz. 134, prescribes the time within which execution may issue of course against a freeholder or inhabitant of the county having a family. The time is ninety or thirty days after judgment, according as the sum recovered shall exceed twenty-five dollars or not. Then the 135th section provides, that on the oath of danger, execution may go immediately, unless stayed by bond. It adds, that "application for such execution may be made either *before* or *at the time* of rendering the judgment; or, if *reasonable notice* be given to the adverse party, of the intention to apply for such execution, such application may be made at any time after the judgment shall have been rendered."

We think that the execution was regular, whether it be referred to the notice given at the close of the testimony, or after the judgment was rendered. The object in either case is, to afford the defendant a chance for staying execution, by giving the bond mentioned in § 136. The only difference between this and the former statute is, that by the former, execution on oath might go without notice, which required the defendant sometimes to do an act of supererogation, to give security when the plaintiff, perhaps, had no intention to apply for execution. It also gave the plaintiff an opportunity to mislead the defendant, by assurances that execution would not be required, or by holding forth appearances which might create that impression. The statute, we think, did not mean to allow the defendant to come in and contest the issuing of an execution by cross-examining the plaintiff, or any body else who should make the oath of danger. He is to prove facts sufficient to convince the justice. From this

alone is the justice to judge. Such is the course of the application for speedy process in other cases, such as warrants, attachments, &c. Had the statute intended the great strictness of demanding time to be specified in the notice of applying, either at the trial or afterwards, it is highly probable the legislature would have said so in terms, instead of mentioning application or notice generally. Either of the notices in this case enabled the defendant to prevent execution by at once giving the requisite security. If he omitted it, the consequence was not a very severe one ; he was merely compelled to pay damages which he ought to have paid some time before. Ample time was in fact allowed upon both notices. The strictness required by the court below would multiply facilities for evading the execution, by escape or otherwise.

The objection that the first notice was given to the defendant's counsel and not to him personally, is without foundation. His counsel must have been put forward by the defendant as his agent for the purposes of the cause ; and it was his business on receiving the notice, to apprise his client, as it is presumable he did. The notice need not, in all cases, be personal. Suppose the defendant does not appear at all, but keeps beyond the reach of notice : if it be shown that he is out of the way, and that the notice has been given to persons from whom he would probably receive it, as his wife, or some one of his family of suitable age and discretion, at his house, that would be enough. Service on his agent engaged by him to transact the immediate business of the cause, is still better.

It was not much insisted, in argument, that the notice to the agent was defective ; but reliance was mainly put upon the second notice, both as a waiver of the first and as defective in itself. Admitting the latter to be defective, the argument destroys itself. If the last was a mere nullity, it is difficult to see how it is to operate upon the first at all. It was probably intended merely as a more abundant caution, from fear that the first might not be deemed operative. But either was sufficient.

The judgment of the court below must be reversed, and a *venire de novo* must issue.